# REBECCA GORDON

## *vs.*

## HARRY B. GROSS.

### *Specific Performance—Mistake.*

That the owner of property, who was unable to read, in signing a contract for its sale, acted under a mistake as to the price, is ground for refusing specific performance as against her.

*Decided June 23rd, 1922.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Bill by Harry B. Gross against Rebecca Gordon. From a decree for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Simon Silverberg* and *I. William Schimmel,* for the appellant.

*Daniel Ellison,* with whom was *William Cohen* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This suit was brought to compel the specific performance of a contract for the conveyance of the premises known as No. 922 Druid Hill Avenue, in Baltimore City. Before dealing with the facts of the case it is well to get clearly in mind the rules which govern courts in the decreeing of specific performance:

"It is a well recognized principle that the granting of specific performance lies in the sound discretion of the court 'to be exercised upon consideration of all the circumstances of each particular case. The court will be controlled, of course, in the exercise of its discretion, by the established doctrines and settled principles upon the subject; but it does not follow, as matter of course, that because the legal obligation under the contract may be perfect, therefore the equitable power of the court will be exercised to compel or effect specific execution. *In every case,* the question is, whether the exercise of the power is called for *to subserve the ends of justice;* and unless the court is satisfied that the application to it, for this extraordinary assistance, is fair, just and reasonable, in every respect, it will refuse to interfere, and leave the party to other remedies for redress.'

"Again—'The principles regulating the exercise by courts of equity of their power to compel the specific performance of contracts are well settled. Specific performance is not a matter of right in the litigant but it is one of sound judicial discretion controlled by established principles of equity and it will be granted or withheld by the court upon a consideration of all the circumstances of each particular case.' " *Teschner* v. *Falkenwalde,* 135 Md. 114, 119, 120.

The rule here enunciated has been laid down in a large number of other cases. *Rickard* v. *Neff,* 130 Md. 94; *Diffenderfer* v. *Knoche,* 118 Md. 189; *Somerville* v. *Coppage,* 101 Md. 519; *Henneke* v. *Cooke,* 135 Md. 417; and the same rule, with but one slight variation of verbiage, will be found in *Miller's Equity,* sec. 656, and 25 *R. C. L.* pp. 203, 223.

The contract in question, and for the enforcement of which the bill was filed, purports to have been executed on January 3rd, 1921, and was for the conveyance from Mrs. Rebecca Gordon to Harry B. Gross of the property No. 922 Druid Hill Avenue, for a recited consideration of $2,375. In all cases of this nature, the burden of proof is upon the party seeking to have the enforcement decreed. The testimony in

the case is absolutely contradictory the one side to the other. According to the appellee's version, the written contract produced, for the conveyance of the property for the consideration above recited, was executed on the evening of January 3rd, 1921, in the house where Mrs. Gordon was then living, 132 S. Eden Street, Baltimore. According to the appellee's witnesses, Mrs. Gordon made her mark on the contract in the form in which it was offered in evidence, while Mrs. Gordon, with equal positiveness, testifies that she did not touch the pen, or have any part whatever in the making of the cross mark which purports to be hers. The contract recites a payment of one hundred dollars in cash to bind the bargain, and the appellee's witnesses testify that that amount was paid to Mrs. Gordon and that she gave fifty dollars of it to a real estate broker who was present at the time and had written up the contract, while Mrs. Gordon testifies that she received but fifty dollars, and her friend, Mrs. Smulowitz, who was present, says that but fifty dollars was given to Mrs. Gordon, and that the real estate brokers took the other fifty dollars and divided it among themselves. The appellee's evidence is to the effect that Mrs. Gordon was desirous of selling her property on Druid Hill Avenue, and had placed it in the hands of a Mr. Koren, a real estate broker, for that purpose, and that the price which she placed upon the property was $2,500. Mrs. Gordon admits having entrusted the sale of the property to Mr. Koren, but at the figure of $3,500.

On the evening when the contract purports to have been signed, there appeared at the South Eden Street residence of Mrs. Gordon, Mr. Koren, Mr. Lieberman and Mr. Gross. Koren and Lieberman were both real estate brokers. Gross is hardly to be described as a real estate broker, although his business seems to have been mainly in the buying and selling of small property. All of the parties carried on their conversation in the Yiddish tongue, or, as some style it, Jewish. Koren is very positive that Mrs. Gordon named $2,500 as her

price for the property, while Mrs. Gordon is equally positive that the price named to Mr. Koren was $3,500. Koren secured no purchaser, and Mrs. Gordon on a number of occasions interviewed him as to why he had not found some one to buy the property. He told her that the price was too high. When Mr. Gross appeared, the witnesses of the appellee say that Mrs. Gordon reduced her price from $2,500 to $2,400. Her attention was called to the fact that the house was much in need of certain repairs, and she was offered first $1,800, and upon that being refused, the offer was increased to $2,000 or $2,100. This she was unwilling to accept. She did, however, say that she would allow $25 towards the cost of the repairs. The real estate brokers and prospective purchaser left her house, but returned in a short time stating that Mr. Gross would accept her abatement in price of $25, and give her $2,375 for the property. This she seems to have understood as $3,375, instead of the figure testified to by the appellee's witnesses. Accordingly, Mrs. Gordon being unable to read or write, Mr. Koren sat down and drew the contract which the Court is now asked to enforce, using therefor a fountain pen which he had in his pocket.

On the day following the alleged execution of this paper, Mrs. Gordon took the same to her friend, Miss Mendelsohn, to have it read to her, and, upon the price being read by Miss Mendelsohn, she uttered an exclamation, and then spent the greater part of a day in an endeavor to find Mr. Gross and renounce the contract as not expressing the agreement between the parties, and that she had signed it, if she did in fact sign it, under an entire misapprehension. She failed in her endeavor to see Mr. Gross, but within a day or two did see his attorney, to whom had been given charge of the examination of title. A bill for specific performance of the contract was filed prior to the lapse of the thirty days allowed for the examination of title. This bill, on demurrer, was dismissed as prematurely filed, and then, when the thirty days had elapsed, the present bill was filed, and after two *non*

*ests* the case was continued by order of publication against Mrs. Gordon.

Outside of the parties directly interested, either as purchaser, brokers expecting a commission, or close personal friends, there is no evidence in the record as to the real or probable value of the property, except such as may be inferred from the testimony of Myers, the tenant occupying the property, who was paying a rental of $40 per month for the property. Upon any ordinary capitalization of this rental there would be indicated a value markedly in excess of $2,375. In some of its aspects the facts as testified to strongly suggest a fraudulent conspiracy as between the real estate brokers and the appellee to secure this property at a grossly inadequate price. But the best that can be said for the diversity in the testimony is that there was an error of such a nature as to satisfy the Court that there had never in fact been a meeting of minds as to the terms such as were indicated by the contract offered in evidence. If there had been a deliberate fraud perpetrated by the brokers upon Mrs. Gordon, clearly no court of equity ought to require her to specifically perform the alleged contract. But if it was a case of an error committed with regard to the price, it is directly in analogy with the case of *Samuel* v. *Cityco Realty Company,* 141 Md. 27, and in that event the contract upon which this suit is brought cannot be sustained, the proof of the plaintiff not measuring up to what is required.

From these considerations it follows that the decree of the Circuit Court of Baltimore City from which this appeal was taken must be reversed and the bill dismissed.

> *Decree reversed and bill dismissed, each party to pay their own costs.*