## PATTERSON v McCOMAS

Ohio Appeals, 1st Dist, Hamilton Co

No 5380. Decided March 28, 1938

Bert H. Long, Cincinnati, Milton M. Bloom, Cincinnati, for appellee.

Peck, Shaffer & Williams, Cincinnati, Kunkel & Kunkel, Cincinnati, Harmon, Colston, Goldsmith & Hoadly, Cincinnati, for appellants.

## OPINION

By HAMILTON, J.

The action is one for specific performance of a contract to purchase and sell a tract of land, which is described in the petition.

The contract in question was entered into on or about the 19th day of September, 1936, by and between the plaintiff, L. P. Patterson, the purchaser, and one Ida T. McComas, since deceased. The defendants are the heirs and administrator of the said Ida T. McComas, now deceased. Defendants Brown were the real estate agents in the transaction.

It appears that on or about the 19th day of September, 1936, Audley H. Brown, one of the defendants, presented to L. T. Patterson a contract to purchase the real estate in question, using the form adopted by the Cincinnati Real Estate Board, which was an offer to purchase. The contract sets forth the property in question and the terms of purchase and contained the clause: "Said real estate to be conveyed by deed of general warranty in fee simple, with release of dower on     days from date. Title to be free, clear and unincumbered, and excepting general restrictions established

for the subdivision of which this property is a part, * * *"

Patterson signed this offer to purchase, and, at the same time, as provided in the contract, deposited $1500.00 with Brown & Brown "as agent for the seller, as earnest money to apply on the purchase price which is to be retained by the agent until the terms of this contract have been complied with."

It is further provided that the offer was to remain open for acceptance until the 30th day of September, 1936, midnight.

On September 28th, 1936, the contract was signed. accepting the proposition with the following acceptance:

"I/we hereby accept the above proposition submitted to me/us by you, as my/our agent, and I, we hereby agree to pay you for your services rendered the rate of commission as established by the Cincinnati Real Estate Board and I/we hereby authorize you, when this transaction is completed, to apply any earnest money in your hands in connection therewith toward the payment of such commission.

"(Signed) Ida T. McComas."

There is no time limit fixed in the contract for the consummation of the sale, therefore, the rule of reasonable time would apply for such consummation.

Patterson had the title examined and was satisfied and ready to complete the transaction.

Before signing the contract, Mrs. McComas expressed a desire to have some idea from her daughter as to the sale and the price; the price being $500.00 per acre for a 46 acre tract. Mr. Brown, the agent, undertook to communicate with the daughter, who lived in the east, and wrote her a letter and later telephoned her giving the terms of the transaction and the price. Mr. Brown received a telegram which read:— "Price sufficient. Air mail letter to follow." Thereupon, Mrs. McComas signed, accepting the offer and completing the contract. Later, it developed there was a mistake on the part of the Western Union Telegraph Company in the telegram, in that the word "sufficient" should have been "insufficient". Upon the development of this error, Mrs. McComas declined to proceed to carry out the contract, and this information was conveyed by Brown to Patterson on the 15th day of October, 1936. On the 24th day of October, 1936, said Ida T. McComas died intestate, leaving the defendant Richard T. McComas, her widower, surviving, together with the defendants, Hazel M. Fiske, Ralph T. McComas, and Donald R. McComas, the only children and heirs at law.

On the 13th day of November, 1936. the plaintiff tendered the defendants, John Weld Peck, administrator of the estate of Ida T. McComas, Hazel M. Fiske, Ralph T. McComas, and Donald R. McComas, the sum of $21.500 in cash, the balance of the purchase price under the terms of the contract and demanded a deed for said premises, which was refused, and the plaintiff now offers and tenders to the court the balance of the purchase price, to-wit: The sum of $21,500, and asks the court to decree specific performance, and asks that the defendants Audley H. Brown and J. Franklin Brown, partners, be required to set up whatever claim they may have under the contract.

To this petition, the administrator of the estate of Ida T. McComas, Richard T. McComas, Hazel M. Fiske, and Ralph T. McComas, filed an answer, which is, first a general denial, and second, that Ida T. McComas at the time alleged in the petition did not have mental capacity to execute the contract; third, the defense that Ida T. McComas was induced to sign the alleged contract by mistake of fact, that it was known and understood by the plaintiff that Ida T. McComas would sign such contract only upon the advice and approval of the defendant Hazel M. Fiske, and that the telegram which stated that the price was sufficient was such a mistake as to mislead her into signing the contract and charged undue influence on the part of Brown in inducing Ida T. McComas to sign said contract, she being aged, mentally weak, and unable to sign the purported contracts. They pray that the petition be dismissed, and that their title be quieted, for all other and proper relief.

Defendants filed further separate answers adopting the allegations of the joint answer, as above stated, and the plaintiff filed an amendment to the petition, setting forth that Richard T. McComas claims a dower interest and asks that that interest be adjudged and the performance required.

Brown & Brown filed an answer and cross-petition in which they set up their interest arising from the contract concerning their commission. To their cross-petition, the other defendants filed answers denying the agency and in substance the allegations contained in the original petition.

The trial court entered judgment and decree, granting specific performance, and a judgment for Brown & Brown for their commission. From that decree the defendants other than Brown & Brown appealed to this court. In this court the defendants other than Brown & Brown asked leave to file an amendment to their answer, asking the cancellation of the contract. This amendment may be filed, although it will have no important effect in the case, as the relief sought could be had under their original answer to quiet title and other equitable relief. However, no harm can come from the amendment to the answer, as it seeks additional relief only, which the court of equity may consider.

It is first contended and defendants endeavor to show that Brown & Brown were not the agents of Ida T. McComas, but were the agents of L. T. Patterson. The evidence does not support the defendants in this contention. The record discloses, and as appears from the record on the examination for the purpose of establishing agency in order that the plaintiff might testify, the question of agency was gone into fully, and there the following facts were established. Patterson first was looking for a country place, and drove out to this property and the tenant living on the place showed him the property, and while there, Donald R. McComas was presented, and they talked some about the property. A little later, Mrs. Patterson, the plaintiff's wife, called on Mrs. McComas, to talk to her about the property, and Mrs. McComas informed her the property was for sale, and she thought she ought to have $1000 an acre. Mrs. Patterson informed her the price was too high and left. Mrs. McComas was an aged lady, but transacted all her own business, collected her rents and discharged her obligations. She consulted her daughter or son, if convenient, and consulted the defendant Audley H. Brown, who was engaged in the real estate business and who had been a particular friend of the McComas family for many years. After the visit of Mrs. Patterson, Mrs. McComas called Audley H. Brown and told him of the prospect, and also stated to him that she had asked Mrs. Patterson $1000 an acre, and asked Brown about it. Brown informed her her price was too high, but stated he would see Patterson and talk to him. He saw Patterson and took him out to the property. Patterson said he would give $400.00 an acre for the property, but

Brown informed him that was too low. If he wanted to make an offer of $500.00 an acre he would take such an offer to Mrs. McComas. Thereupon, Brown prepared an offer on the form adopted by the Cincinnati Real Estate Board, with the terms as above briefly recited. Patterson signed the contract and Brown took it to Mrs. McComas advising her to sign it, as it was a good price in his estimation for the property. Upon instructions from Mrs. McComas, Brown wrote a letter to Mrs. Fiske, the daughter. Not hearing from her, he called her on the telephone, resulting as hereinbefore stated. It will be noted that in the contract, Mrs. McComas represented Brown & Brown as her agent and contracted to pay them for their services. The only suggestion that Brown & Brown were the agents of Patterson was the inference from the fact that he brought the offer Patterson had signed to be submitted to Mrs. McComas. This is in perfect accord with his transaction with Mrs. McComas, as her agent and in no wise inconsistent with his work as her agent.

It was established that Brown & Brown were the decedent's agents and competent to testify, and Mr. Brown did testify.

On the question of mental capacity:— There does not appear to be any question but that Mrs. McComas did have mental capacity to enter into an agreement to sell this property. In fact, the evidence discloses her to be in a very good mental condition, and capable of judging all transactions in which she was engaged.

This brings us to the question as to whether or not the mistake in the telegram was such a mistake of fact as would relieve her from the consequences of entering into the contract. We think not. Patterson knew nothing of her reliance upon her daughter, if she did so, he knew nothing about the telegram. He was dealing with Mrs. McComas and relied upon her acts. If there was a mere mistake in the advice she secured, even if she so desired, she could not invalidate the contract as against Patterson. No undue advantage can be said to follow by reason of the price of the property being inadequate. While it is true, Mrs. McComas first had the idea of $1000.00 an acre, the great weight of the testimony is to the effect that $500.00 an acre is a large figure for the property. Some of the values for the entire tract being as low as $18,000 00 but one witness did testify to a higher value, and this witness was a lady

who thought the property was worth considerably more. So no advantage is shown to have taken place as to the price of the property.

The rule is, that the fact concerning which the mistake is made must be material to the contract, affecting its substance. The mistake of fact must af- ▮▮▮▮▮▮▮ fect both parties in reference to the same fact, which, though connected with the agreement, is merely incidental, and not a part of its subject matter or essential to any of its terms. See: Pomeroy, Specific Performance, §240. The fact that she would or would not have signed the contract, depending upon the advice of her daughter, could not affect plaintiff in his right to have the contract performed, and it will be noted further the contract itself provided:

"The printed and written contract on this page constitutes the entire agreement between the parties and no oral or verbal agreement or understanding shall bind either of them."

In the absence of a showing that Mrs. McComas was unduly influenced by some one on behalf of Patterson, or mental incapacity, the mistake in the telegram would not be a sufficient ground for cancelling the contract or for refusing specific performance thereof.

The claimed undue influence or inducement is not supported by the evidence. True, Brown advised Mrs. McComas ▮▮▮▮▮▮▮ to sign the contract for $500.00 per acre, as he thought it was a good price for the property, and he may have used some salesmanship in order to earn a fee. But all he did was to suggest that she sign the contract, as he considered it a good sale. The fact that she held up the signing of the contract for a period of ten days shows she was not unduly influenced by any one. We quote the following letter:

"Mrs. Richard T. McComas
"2401 Grandview Avenue
"Cincinnati, Ohio.
                          "Sep. 30th, 1936.
"Dear Hazel:
"Your letter came at last, but too late to do any good. I wrote you that I thought I might sell the country property, but wanted to consult you first. Audley wrote too but did not get a reply. Audley did rush the sale a little too quick to suit me. He made out the real estate papers for 500 dollars an acre without asking me, of course

nothing was signed but Patterson name and Audley's to close the deal. No Audley did not get Mrs. Patterson. She came direct to us, though Mrs. Williams who lives in the house. She, Mrs. P. looked the place over and told Mrs. Williams she would like to buy it, if for sale.

"She came to see me. I asked her 1000 dollars an acre, and wanted to sell it all. She said she would see what her husband would say, and let me know, but I never heard from her. In the meantime, I called Audley, and he said it wasn't worth a $1000 an acre, and I would never get that much. then A went to see Mr. Patterson, he knows him very (Mr. P.) had looked at a place on Springfield Pike, but there was a hundred acres of ground and they did not want that much ground, then Audley was afraid he would lose the sale so he made out the papers at 500 dollars an acre. Of course, A was thinking of his money too.

"The Pattersons lived in Avondale, they have a lovely home but not much yard, they are too close to their neighbors, and she wants lots of ground, they are not moving until spring, then remodel the house and make many improvements. The Williams will be there this winter. I get one more month's rent. Audley says they have a beautiful home. They have no children. They lost their only child. **Audley will get the sale of their home.**

"If you hadn't sent that telegram to Audley, saying it was all right with you and Ralph, I would not have signed my name. Audley brought it with him for me to see. I will send you and Ralph a copy of the deal in a day or two so you will understand it better. I am very sorry like you and R are that we didn't get six or seven more an acre for it. I ought to have written Ralph, but will write a birthday letter tomorrow for Oct. the 4th.

"I wrote the Hookers our regrets but do not intend sending a present. They have not treated us right. You will go to the wedding if Don can get off. Your father has lost lots of weight, he has a poor appetite. Don says he don't eat enough.
"Love to all.

                                    "M."

The last and most strongly urged bar to specific performance claimed by the defendants is the dower interest of Richard T. McComas, the surviving spouse. We think this situation is answered by §10502-1, GC, of the new Probate Code, which was in force and effect at the time Mrs. Ida T. McComas died before the contract could

be consummated. While she lived, Richard T. McComas had an inchoate right of dower in the property. Mrs. McComas' contract provided in specific terms that the property was to be conveyed free of dower. Upon the death of Ida T. McComas, the dower interest of Richard T. McComas was terminated under the terms of the statute. The pertinent part of the statute is:

"A spouse who has not relinquished or been barred of it shall be endowed of an estate for life in one-third of all the real property of which the consort was seized as an estate of inheritance at any time during the marriage, but all such dower interest shall terminate and be barred upon the death of the consort except: * * *"

Then follows the provision relating to preserving the inchoate dower right during the marriage:—
"In lieu of such dower interest as terminates and is barred pursuant to the provisions of this section, a surviving spouse shall be entitled to the distributive share provided by the statute of descent and distribution."

Under this section of the statute, the value to the surviving spouse would be very much greater than the dower interest, if such he had, which we find no longer obtains under the statute. We do not find it necessary to discuss the law prior to the enactment of §10502-1, GC. We are of opinion, however, that even so it would not be a bar to specific performance on terms and conditions. If the question of dower ever ▇▇▇▇ was an obstacle to specific performance, that obstacle having been removed, it may not be advanced here as a bar. It is stated in 25 R.C.L. page 277:

"If an incumbent can be removed merely by the application of the purchase money and the court is able to provide for the conveyance of a clear title to the vendee, the mere fact that encumbrances exist, which the vendor has not removed, or even is unable to remove without the application of the purchase money for that purpose, will not prevent a decree for a specific performance."

In this case if the right of inchoate dower could be considered as an encumbrance that obstacle has been removed by the statute and is no longer a bar to the right of specific performance in this case.

We find the issues in favor of the appellee, plaintiff, and a like decree to that entered in the Court of Common Pleas will be entered here.

ROSS, PJ, and MATTHEWS, J, concur.