## KAPPELMAN *v.* BOWIE ET UX.

[No. 22, October Term, 1952.]

*Decided December 4, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Everett L. Buckmaster* and *George L. Clarke,* with whom were *Buckmaster, White, Mindel and Clarke* and *Charles Mindel* on the brief, for appellant.

*W. A. C. Hughes, Jr.,* with whom was *Juanita Jackson Mitchell* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree dismissing a bill for specific performance of a real estate contract repudiated by the vendors, on the ground of mistake and inadequacy of price. The facts may be briefly stated.

The respondents purchased for investment the premises in question, 1917 West North Avenue, in June, 1947 for $7,000, subject to a ground rent of $90. They spent about $2,000 in repairs and improvements, converting the dwelling into three apartments which they rented for a total of $113 per month. In April, 1951 they redeemed the ground rent for $1,500, increasing their mortgage for that purpose to $5,500. In September, 1951 they signed a standard multiple listing contract with Weaver Brothers, Inc., authorizing the sale of the property for $9,500, subject to a $90 ground rent to be created. Their reason for wishing to sell was that a strike was imminent at Mr. Bowie's place of employment, the Bethlehem Steel Company, and he was fearful that he would be unable to keep up the mortgage payments.

After obtaining the listing, according to Mr. Jordan, the representative of Weaver Brothers, Inc., the property was advertised and several prospective purchasers expressed an interest in buying for a small down payment. They were not shown the property because Bowie insisted on cash. Jordan told him he would have to take "a great deal less money" on that basis. Kappelman,

an investor whom Jordan had known previously, looked at the property and made an offer to buy it in fee for $7,500 cash. On September 29 Jordan submitted the offer to the Bowies in the form of a standard contract which he had prepared stating the terms to be $7,500 in fee simple. They read the contract and signed it after making certain alterations by interlineation, cancelling the inclusion of screens and shades, which belonged to the tenants, and reducing the time for settlement from 90 to 60 days. They admit that they initialed these alterations and signed the contract. It was then delivered to and signed by Kappelman, who made the required down payment. The Bowies testified that at the time they signed the contract they asked Jordan, "What about the ground?" and he replied, "That will be taken care of." Jordan denied that there was any discussion about ground rent at that time, although he admitted that at the time the listing contract was signed he had discussed the effect of their purchase of the outstanding ground rent and had told them that the steps necessary to the creation of a new rent would be taken at the time of sale.

The Bowies testified that they learned of their error from their mortgagee a few days later, and notified Jordan. Jordan testified (they denied) that they told him they had received a better offer. Kappelman refused to rescind the sale, except on payment to him of $1,000. They then consulted counsel who repudiated the contract on their behalf on October 19. Thereupon Kappelman filed suit. The chancellor expressed the view that the price was grossly inadequate. He did not make any finding on the question of mistake although he did comment that "the real estate man was incompetent or worse."

We think the case turns on the question whether there was such a unilateral mistake, under all the circumstances in the case, as would constitute a defense to specific performance. It is clear that Kappelman was not mistaken nor is he chargeable with any mistake

that may have been made by the vendors, since he dealt entirely with their agent. The appellant contends that the appellees were not mistaken because they read the contract and knew, or ought to have known, what it contained, and their repudiation was an afterthought. We think the testimony does not support this contention.

The testimony of the appellees is definite that they thought the price was to be $7,500, subject to a ground rent to be created. There is no dispute that the listing agreement called for a ground rent to be created, and it is not reasonable to suppose that they would have been willing to forego, without discussion, a ground rent worth $1,500, on top of a reduction of $2,000 in the asking price for property in which they had an investment of over $10,000. Jordan's testimony that there was no discussion seems highly incredible. Moreover, their testimony is that they did raise the question. The appellees were negroes with little business experience. He was a partially deaf steel worker who had only gone as far as the second grade in school; she was a domestic servant with fourth grade schooling. The purchase of 1917 West North Avenue was their first joint venture in property matters, although she had inherited another property from her former husband. In dealing with the experienced agent of an established real estate concern they placed reliance upon one who stood in a confidential relationship to them. When told that the ground rent would be "taken care of", despite the language of the contract, they not unnaturally assumed, as they testified, that the ground rent would be created before the settlement was put through.

It has long been established in Maryland that a unilateral mistake as to the terms of a contract of sale may be a defense to a suit for specific performance. *Kraft v. Egan*, 78 Md. 36, 26 A. 1082; *Sommerville v. Coppage*, 101 Md. 519, 61 A. 318; *Henneke v. Cooke*, 135 Md. 417, 109 A. 113; *Samuel v. Cityco Realty Co.*, 141 Md. 27, 118 A. 124; *Gross v. Stone*, 173 Md. 653, 197 A. 137; *Clarke v. Kirsner*, 196 Md. 52, 74 A. 2d 830. These

cases seem to be in accord with the law as laid down in other states. See *Restatement, Contracts,* § 367(c); *Williston, Contracts* (Rev. Ed.) § 1427; *Pomeroy, Equity Jurisprudence* (5th Ed.) § 860; note 65 A. L. R. 7, 97. The defense has been sustained, despite the fact that there was more or less negligence in the party setting it up. It is true that in some cases, such as *Caplan v. Buckner,* 123 Md. 590, 91 A. 481, relief has been denied where the evidence did not show a bona fide or material mistake.

The appellant contends, however, that even if the appellees made a mistake induced by a misrepresentation of their own agent, it would not be a defense if not induced by the opposite party. The contention overlooks the true basis for the rule, which is rooted in the proposition that equity may refuse the extraordinary remedy of specific performance where to do so would enforce a hard bargain, at least where the mistaken party was not grossly negligent and the opposite party would not be prejudiced except to the extent of losing a windfall. It may be that this recognition of a unilateral mistake as a defense is inconsistent with the objective theory of contracts, to the extent that it permits the rescission of an executory contract on equitable grounds. *Cf. Williston, Contracts* (Rev. Ed.) § 1579. Whether it would be a good defense in an action at law under a plea on equitable grounds, is a question we need not now consider. We can see no distinction in principle whether the mistake is made by the vendor or the vendor's agent. In *Henneke v. Cooke* and *Samuel v. Cityco Realty Co., supra,* the mistake was the agent's alone. It was not suggested that the result would have been different if the mistake had been the vendor's alone, or had occurred in transmitting the offer or acceptance to his own agent rather than to the purchaser. In the instant case the only effect of the misrepresentation by the agent to his principals, for which the purchaser was not responsible, would be to excuse, to some extent, the negligence of the vendor in failing to appreciate that the provision for the creation

of the ground rent should have been expressed in the contract.

The cases of *Standard Oil Co. v. Murray,* 214 Mich. 299, 183 N. W. 55 and *Patterson v. McComas,* Ohio App., 37 N. E. 2d 655, relied on by the appellant, are distinguishable because in the case first cited the court apparently did not recognize the defense of unilateral mistake, and in the other case the court found the mistake was not material. *Cf. Clark v. Kirsner, supra.* In *Welsh v. Ford,* 282 Pa. 96, 127 A. 431 the court found that there was no fraud and the price was adequate. In *Wittlin v. Giacalone,* 84 U. S. App. D. C. 140, 171 F. 2d 147 the question turned on the authority of the agent to act and the court found evidence of ratification. In *McShane v. Hazlehurst,* 50 Md. 107, it was held that a charge of fraud by the opposite party was not made out. In none of these cases do we find basis for the contention that a unilateral mistake by the vendors is any the less a defense because the mistaken terms were communicated by an agent who was not himself aware of the mistake or was indifferent to it. Nor do we find room in any of the cases for the contention that where specific performance is denied the court may award damages for loss of the bargain in lieu of specific performance.

We agree with the chancellor that the price in the instant case was grossly inadequate, and that the property was worth at least $9,000 in fee, the price that the appellees, according to their testimony, thought they were selling for. Mere inadequacy of price is, of course, not a sufficient ground for denying specific performance, but it may be considered in connection with other grounds of equitable relief. There is no evidence of laches or prejudice to the appellant by the moderate delay in repudiation of the contract. Under all the circumstances of the case we think the decree dismissing the bill must be affirmed.

*Decree affirmed, with costs.*