RICHMOND STANDARD STEEL SPIKE & IRON CO. v. CHESTERFIELD
COAL CO.

(Circuit Court of Appeals, Fourth Circuit.  January 18, 1908.)

No. 750.

FRAUDS, STATUTE OF—REQUISITES OF WRITING—SIGNATURE.

A writing purporting to be a contract between two corporations for the
sale and purchase of coal, signed by one and having the name of the other
typewritten at the end by the draftsman, without authority, with a blank
following it for the signature of the officer executing the same, but which
blank was never filled, is not a signed contract effectual to avoid the Vir-
ginia statute of frauds, nor does it become such because the corporation
not signing made deliveries of coal in accordance with its terms, where
it subsequently refused to make further deliveries.

In Error to the Circuit Court of the United States for the Eastern
District of Virginia, at Richmond.

William L. Royall, for plaintiff in error.

John Pickrell and William Crump Tucker, for defendant in error.

Before PRITCHARD, Circuit Judge, and PURNELL and BOYD,
District Judges.

PER CURIAM. This is an action of trespass on the case in as-
sumpsit in the Circuit Court of the United States for the Eastern Dis-
trict of Virginia, at Richmond, in which the plaintiff below, the Rich-
mond Standard Steel Spike & Iron Company, which is the plaintiff in
error here, sought to recover damages of the defendant below, the
Chesterfield Coal Company, the defendant in error here, for an alleged
breach of contract for a year's supply of coal to be used at the manu-
facturing establishment of the plaintiff in error at Richmond. Both
parties are corporations.

The cause of action of the plaintiff is an alleged contract in writing
signed by the parties, bearing date the 20th day of May, 1902, in which
it was agreed that the party of the first part, the Chesterfield Coal
Company of New York, should furnish and deliver to the party of
the second part on board cars at Winterpock, Va., car load Clover
Hill R. O. M. coal, same quality as sample sent, which the party of the
second part, the Richmond Standard Steel Spike & Iron Company,
would need from the day of the alleged contract until May 31, 1903,
approximating the quantity at about 2,500 tons, more or less, the same
to be shipped in quantities and at such time as party of the second
part might direct during the continuance of the contract, at the price
of $2 per ton of 2,240 pounds, f. o. b. at the mines. The defendant
denied the execution of the contract, and interposed the plea of res
adjudicata, because of the fact, as alleged, that in a suit in the state
court of Virginia the same cause of action between practically the
same parties had been considered, passed upon, and determined, and
a further defense that the contract in its terms was not to be performed
within a year from its date, and that the same was not in writing and
signed by the parties as required by the Virginia statute of frauds,
and was therefore invalid. On the trial of the cause in the Circuit

Court, a trial by jury was duly waived, and the issues of fact arising upon the pleadings, together with questions of law involved, were submitted to the presiding judge. After hearing the evidence, a decision was rendered by the court in favor of the defendant, and judgment accordingly entered. Several exceptions were taken and are presented for our consideration, but we deem it necessary in disposing of the case to consider only one, which was taken and is relied upon by the plaintiff in error.

The point primarily involved, and which if adverse to the plaintiff in error is decisive of the controversy, is whether a contract signed by one of the parties sought to be bound thereby, with the name of the other party written in type by the draftsman without authority at the time, can, by subsequent action of the party whose name was signed in type, become by adoption a signed contract so as to be effectual to avoid the Virginia statute of frauds, which requires a contract not to be performed within a year to be in writing and signed by the contracting parties. The paper writing claimed by the plaintiff in error in this case to be a contract in compliance with the Virginia statute setting out the terms of the contract and signed by the parties was typewritten in the office of John S. Lear & Co., coal brokers, in Richmond, Va. The name of the Chesterfield Coal Company was typewritten at the time of drafting this paper at the bottom of the draft by the typewriter, and immediately, in this condition, sent to the plaintiff in error and properly signed in its name by the vice president and general manager of the company. The paper thus signed was then transmitted to the office of the defendant in error in New York, where it remained without further signature or signing by the defendant.

The correspondence in regard to furnishing coal to the plaintiff in error by the defendant had commenced in November, 1901. A man by the name of Jewett, who was a member of the firm of Jno. S. Lear & Co., being the active person in the correspondence, and there were a number of communications between Jewett and the defendant company in New York, and also between Jewett and the plaintiff in error, relating to a contract for the furnishing of coal to the plaintiff by the defendant, all of which will be found in the record. Subsequent to November, 1901, to wit, beginning in the year 1902, other correspondence of like character appears in the record; and it further appears that shortly before the draft of the alleged contract the defendant shipped to the plaintiff a car of sample coal, and a little later on two cars of sample coal at the plaintiff's request; that these samples proved satisfactory, and, thereupon, as stated, the contract was drafted in the office of Lear & Co., was presented to the plaintiff and signed as before stated. After the contract was signed by plaintiff and had been transmitted to New York with the name of the defendant company thereto written in type, there is evidence tending to show that the defendant company commenced to ship cargoes of coal to plaintiff in quantities and at prices as set out in the terms of the said draft, and thus continued until about July 21, 1902, when plaintiff complained to defendant that the coal being shipped was not of the character and quality required by the contract. Thereupon the defendant refused

160 F.—53

further to ship coal to plaintiff on the ground that it had made no contract with plaintiff as claimed.

The contention of the plaintiff in this case is that although the Chesterfield Coal Company did not actually sign the contract in the first instance, and that the name of the Chesterfield Coal Company was placed there by the typewriter without authority, yet, after the plaintiff had executed the paper as a contract and the same had gone into the possession of the defendant and was held by it, the defendant had in the meantime proceeded to supply the plaintiff with coal precisely as set out in the terms of the draft; that the defendant thus accepted the contract, recognized the signing as its act, became bound by the terms of the draft, and thereby adopted the name which had theretofore been typewritten as the name and signature of the said company; and that the typewritten draft then became a written contract signed by the parties so as to be effectual to avoid the Virginia statute of frauds.

A careful consideration of the facts disclosed by the record shows that there might have been a meeting of the minds of the parties to such an extent as to constitute a parol contract capable of enforcement. However, that is a question raised by the assignment of error before us. It is admitted by the plaintiff in error that unless it can be shown that the contract in this instance was reduced to writing and signed by the parties the cause of action is barred by the statute of frauds. It may be taken for granted, and there are strong circumstances to sustain the conclusion, that the parties in the outset intended to enter into a contract so executed as to meet the requirements of the Virginia statute, and the plaintiff in error, through its vice president, signed the blank under its name that had been attached by the typewriter. But the contract in this condition was only partially executed, and could not be treated as completed until the president or other properly authorized officer or agent of the defendant had signed also in the blank left by the typewriter for that purpose. It cannot therefore, in our opinion, be reasonably insisted that the contract was in writing and signed by the parties as required by the laws of the state of Virginia. The paper relied upon here as a contract when presented to the defendant company did not even contain what purported to be the signature of the company—there were only the four typewritten words, "The Chesterfield Coal Company." If the draft had contained not only the name of the company, but also the name of its president or other officer or agent authorized to sign the corporate name of the company, thus complying with the requirements necessary to bind a corporation in the execution of a contract, and in this condition the president or other authorized officer or agent of the defendant had accepted the paper, and by words or action had given recognition to the same by admitting the signing and signature as the act of the company for the purpose of binding it, then there would be much force in the contention of counsel for the plaintiff in error that, although the signing and signature was unauthorized in the outset, there was a subsequent adoption which rendered the contract complete. But the facts and circumstances in connection with the alleged contract, which is the basis of this action, are not sufficient in our opinion to lay the foundation for that view.

We are confronted by a further question in this case, and that is that in the trial below it became the duty of the trial judge to discharge the functions both of the jury and of the judge. In assuming the province of the jury he had necessarily to pass upon the testimony, the weight, the character, and effect of the testimony pro and con in determining the issues of fact, and when he rendered his decision it was in its relation to the issues of fact a verdict of the same legal import as if it had been rendered by a jury duly sworn and impaneled in the case, and is subject to be reviewed to the extent only that an appellate court has the right under the law to review the findings of a jury. One of the findings of fact is that the contract in question had not been put in writing and signed by the parties as required by law in order to avoid the operation of the statute of frauds. The finding of the court in this respect being as follows:

"That the contract alleged in the declaration was not to be performed within a year, was not in writing, signed by the defendant or its duly authorized agent in that behalf, and hence under the statute of frauds no recovery could be had thereon."

We do not feel that we would be justified under the circumstances of this case in interfering with this finding of fact. We might enlarge upon the question presented by discussing the difference between the rules which should be applied to individual liability accruing from subsequent adoption of a signing or signature to an obligation and that of a corporation. An individual acts for himself and upon his own responsibility, and he is at liberty to recognize or adopt a signature as his own, and thereby bind himself by the terms of the paper or instrument to which it is attached. But corporations act through their legally constituted agents or instrumentalities, and therefore, in order to bind the latter under the principle of adoption, it would, in our opinion at least, be necessary that the formal method required in execution of written obligations by a corporation should in the outset be observed. That was not done in the case here.

For the reasons herein assigned the judgment of the Circuit Court is affirmed.