IN THE MATTER OF THE ESTATE OF MARY J. DE GARMENDIA, Deceased.

*Probate of Will—Right to Object—Foreign Will—Signature Not at End.*

Legatees under an earlier will may resist probate of a later will by which the earlier will would be superseded.          p. 50

On appeal from the orphans' court, the question of the ademption of a legacy cannot be adjudicated if it was not considered in the court below.          p. 51

It cannot be assumed, in the absence of proof, as regards a provision of the German Civil Code validating a holographic will if *"unterschriebene"* by the testator, that this latter requirement is satisfied by the testator's writing of his name in the first part of the will, although, in Maryland and most other common law states, this is regarded as satisfying the statutory requirement of testator's signature, if it is intended by him as a signature.          pp. 51, 52

The writing of his name by the testator in the introduction of the will cannot be regarded as a signature to the will when his intention that the will should not be complete without his

signature at the end appears from the presence of blank spaces in the signature clause, the absence of testator's signature at the place prepared for signing, and the absence of the signatures of witnesses after the attestation clause, it furthermore not appearing that testator had any knowledge that a will might possibly be valid without a signature at the end. pp. 52-54

*Decided May 7th, 1924.*

Appeals from the Orphans' Court of Baltimore City.

Separate petitions by Natalie Jenness Elwyn and Caroline Von Wallbrunn. From orders dismissing each of said petitions, the petitioners separately appeal. Reversed on appeal of Natalie Jenness Elwyn, and affirmed on appeal of Caroline Von Wallbrunn.

The causes were argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*W. Ainsworth Parker,* for Natalie Jenness Elwyn, appellant.

*J. Britain Winter,* for Caroline Von Wallbrunn, appellant.

BOND, J., delivered the opinion of the Court.

These appeals present for review two orders of the Orphans' Court of Baltimore City, the first of which denied a petition of Natalie Jenness Elwyn for leave to intervene and object to the probate of a paper offered as the will of Mary J. de Garmendia, deceased; and the second of which refused probate of the paper nevertheless.

Mary J. de Garmendia died in Paris, France, on January 8th or 9th, 1923; and her husband then found among some papers in her desk at home two papers in the form of a will. Both were written entirely in her own handwriting, and the formal introductions and conclusions were identical. A model form, such as is commonly used in this State, had been furnished her some years before by her counsel in Baltimore, and

the papers were apparently both prepared on this form. The first, executed in Paris, December 10th, 1913, was dated, signed after the usual provision for signature, and attested by two witnesses after the usual attestation clause. That document was duly forwarded to Baltimore, and probated there on January 26th, 1923.

The second paper, written on smaller, note-size sheets, begins, as the earlier one did:

"I, Mary J. de Garmendia, of the City and State of New York, now residing in Paris, France, being of sound and disposing mind, memory and understanding, do hereby revoke all wills by me heretofore made and do hereby make, publish and declare the following to be my last will and testament, to wit,"

And after the legacies, the appointment of her husband as executor, and some instructions for the management of her estate, there are blank signature and attestation clauses:

"Witness my hand and seal this          day of          ."

"Signed, sealed, published and declared as and for her last will and testament by Mary J. de Garmendia, the aforesaid testatrix, in the presence of us, who at her request, in her presence and in the presence of each other subscribe our names as witnesses hereto."

On the back of these sheets there was an indorsement, also in the handwriting of the decedent:

"This will was made in Nauheim, August 22nd, 1922. My last wishes."

The difference in the contents of the two wills, so far as the parties now before the court are concerned, is that there were two strings of pearls bequeathed by the first will, one to Mrs. Elwyn and one to a Mrs. Rogestvensky, and in the 1922 document only one string of pearls is mentioned, and that is bequeathed to Caroline Von Wallbrunn, sister of the decedent. This later paper was not offered for probate at once because of doubt as to its validity as a will. On advice

of counsel, Mrs. Von Wallbrunn later filed a petition pray-
ing that the admission of the 1913 will to probate be revoked
and the later paper be probated as the last will of the dece-
dent.   The order refusing that petition is the main subject
of controversy.

We think the order which is the subject of the first appeal
must be reversed because, in our judgment, the interest of
Mrs. Elwyn, as legatee named in the earlier will, entitled
her to intervene to resist probate of the will offered to super-
sede that earlier one.   *Home for the Aged* v. *Bantz,* 106 Md.
147, 151, 152; *Schley* v. *McCeney,* 36 Md. 266.

In support of this order it is contended that this Court
has, in some cases at least, expressed an opinion that only an
heir or a distributee of the decedent's property in case of
intestacy would have such an interest as would qualify him
to resist probate of a will.   In *Safe Deposit and Trust Co.*
v. *Devilbiss,* 128 Md. 185, it was said that "it would seem
clear upon principle that only those who have an interest in
the property of the testator in the event the will is annulled
are entitled to caveat the will."   And this and similar state-
ments are cited in the argument.   *Helfrich* v. *Yockel,* 143
Md. 371.   But these statements mean no more than that a
distributee or an heir who would receive a share of the prop-
erty in case of intestacy, is the proper party to contest pro-
bate when intestacy is the alternative contended for under
the caveat.

They do not mean that when the alternative is, not in-
testacy, but the establishment of another and earlier will,
the legatees under that earlier will, who are the only per-
sons interested in point of fact, would be excluded from con-
testing the later will.   This Court has never intended to an-
nounce a rule at variance with the plain rule generally ap-
plied.   See authorities collected in *Annotated Cases,* 1917 C,
906, and *L. R. A.* 1918 A, 470.

The possibility that Mrs. Elwyn's legacy in the earlier
will may have become adeemed by a combination of the
pearls bequeathed to her with another string of pearls into

one inseparable string, cannot, in our opinion, be taken up and adjudicated upon this record. It appears from the record, and the briefs of counsel so inform us, that the court below has not yet considered the question of ademption.

As to the refusal of probate of the will with the blanks; obviously it is not executed in the mode prescribed for wills executed in this State. It is offered as possibly complying with the provision in section 334 of article 93 of the Maryland Code for execution of wills outside of the State "in the mode prescribed by law of the place where executed, * * * provided said last will and testament is in writing and subscribed by the testator."

Nauheim is in Germany, and on behalf of the petitioner, Mrs. Von Wallbrunn, the proponent of this second paper, there was filed an affidavit of a lawyer of Berlin that "it is perfectly well settled in Germany that a will written by the testator needs no witnesses to make it valid." He filed with this a copy of the German Civil Code and referred especially to section 2231, which, according to an English translation furnished to this Court, provides that a valid will can be made "by an olographically written and subscribed declaration of the testator, stating place and date." The German word here translated "subscribed" is *unterschriebene.*

To meet an objection based upon the absence of a signature at the end of this paper the proponent relies on the rule of English law derived from the early case of *Lemayne* v. *Stanley,* 3 Lev. 1, that a testator's name written by himself in the introduction of a will may be a compliance with the requirement of signature in the Statute of Frauds (29 Chas. II, c. 3, sec. 5) and later statutes containing the same requirement. That decision has been consistently adhered to in this Court, and probably in a majority of the courts of this country. *Tilghman* v. *Steuart,* 4 H. & J. 156, 175; *Higdon* v. *Thomas,* 1 H. & G. 139, 148; *Drury* v. *Young,* 58 Md. 546, 553; *Ex parte Cardozo,* 135 Md. 407. The wills upheld in these cases were not so incomplete on their faces as the will now before us. But quite apart from any such differ-

ence, can we, by applying the principle adopted in *Lemayne* v. *Stanley*, with reference to the requirement under the Statute of Frauds, and the Maryland statutes following it, ascertain the mode of execution prescribed in Germany under the German Civil Code, where the legal system is not founded on the common law, and *Lemayne* v. *Stanley* and the cases which have followed it have no authority? We cannot presume that the same view of a signature is taken there. 5 *Wigmore, Evidence* (2nd. ed.), sec. 2536; *Asclanian* v. *Dostumian*, 174 Mass. 328; *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473. We are not informed whether the word *unterschriebene* is interpreted with any latitude. Information which we have seems to show that a similar provision concerning holographic wills, in the French law, has never been considered to permit signature anywhere except at the conclusion of the will. *Succession of Armant*, 43 La. Ann. 310. That was the mode of execution of the holographic wills executed in France and brought before the Court in *Olivet* v. *Whitworth*, 82 Md. 258; and *Lindsay* v. *Wilson*, 103 Md. 252. In our opinion the proof of the mode of execution under the foreign law has not gone far enough in this case; and for that reason alone we should have to affirm the order of the court below on Mrs. Von Wallbrunn's petition.

It may be questioned whether the indorsement on the paper, which contains the only mention of date and place, could be taken as part of the will, so as to comply with the provision of the German Code that the paper must be a holograph declaration "stating place and date." *Roy* v. *Roy*, 16 Gratt. 418; *Warwick* v. *Warwick*, 86 Va. 596; *Estate of Manchester*, 174 Cal. 417; *In re Tyrrell's Estate*, 17 Ariz. 418. But the decision of this point is not necessary, so it is not dwelt upon. And we do not dwell upon the controversy on the meaning of the requirement in the Maryland Code, (article 93, section 334), that a will executed in the mode prescribed by the foreign law must also be subscribed. Determination of this point, too, is unnecessary.

The statutory requirements present what seem to us, after all, minor phases of the outstanding question in the case.

That question is whether this paper, apparently so incomplete and without the execution which it was prepared for, can on the facts brought forward, be probated as a paper intended and left as an executed, final paper. In applying the principle that the writing of the name by the testator in the introduction to the will may be a sufficient signature (*Ex parte Cardozo,* 135 Md. 407), there has been no intention to foist upon a decedent as a will a paper which he did not complete and leave to be taken as an executed will. There has been no intention to dispense with or relax the cautionary formalities by which, under the law, "wills are more especially guarded and protected than any other instruments." *Sewell* v. *Slingluff,* 57 Md. 537, 548. The will considered in *Ex parte Cardozo,* 135 Md. 407, it will be noted, was in the same form as that in *Lemayne* v. *Stanley,* and in both of them the testator apparently meant the will to be complete without signature at the end. Where this appearance of completeness is lacking, as Judge Adkins said in *Ex parte Cardozo,* the principle may not apply.

Prior to 1884, when valid wills of personalty might be made in this State without attesting witnesses, papers in an apparently unfinished state, some of them in the same or substantially the same condition as that of this paper, were at times offered for probate, and this Court had occasion in several early cases to state the principles which govern in this present one. Any incompleteness in such a paper is naturally taken as an indication that the testator did not finally adopt the paper as his will. In the phraseology usual in discussions of the point, the testator is presumed to have been without the *animus testandi.* The strength of the presumption, of course, varies with the nature and extent of the incompleteness of the paper. Any form of will might be adopted, however strange it might seem in a particular instance; and evidence of extrinsic facts is receivable to overcome the natural presumption by showing that the testator did, as a matter of fact, have the *animus testandi* when he left the paper in the condition found; did, as a matter of

fact, intend it to be taken in that condition as his will. But when the incompleteness consists of blank spaces in a signature clause, absence of signature of the testator at the place designated, and absence of signatures of witnesses after an attestation clause, then it would be difficult for a court on any extrinsic testimony to·be satisfied that the paper was intended to be taken as a completed will. *Plater* v. *Groome,* 3 Md. 134; *Tilghman* v. *Steuart,* 4 H. & J. 156; *Barnes* v. *Syester,* 14 Md. 507. And other cases are reviewed in *Brantly's* note to the case of *Visitors of Free School* v. *Bruce,* 1 H. & McH. 509. And in the states where holographic wills are still received as valid without attestation, papers in identically the same condition, or substantially so, continue to be offered for probate, and to be rejected. *Waller* v. *Waller,* 1 Gratt. 454; *Roy* v. *Roy,* 16 Gratt. 418; *Warwick* v. *Warwick,* 86 Va. 596; *Estate of Manchester,* 174 Cal. 417; *In re Tyrrell's Estate,* 17 Ariz. 418; *Crutcher* v. *Crutcher,* 11 Humph. (Tenn.) 377.

An indorsement or label on the enclosing envelope, such as: "My Will—Abraham Warwick," or "My Will, Ida Matilda Manchester," is a common feature in these cases.

The paper offered for probate in this case bears on its face declarations by the decedent that it was not yet signed as she intended to sign it; that it was to be executed at some later time not yet so fixed that the date could be inserted; and that her signing it in the place she had prepared for signing, and now left blank, was to be witnessed and the signatures of the witnesses appended in a place designated, and likewise now left blank. See 1 *Jarman on Wills,* 96. Evidence of extrinsic facts, in affidavits, goes so far as to show that she was at Nauheim on August 22, 1922, that she was familiar with the fact that the will involved in *Lindsay* v. *Wilson,* 103 Md. 252, had been found sufficiently executed under the laws of France without witnesses, and that her counsel had explained to her that this was possible of a holograph will as distinguished from a typewritten will "in a country where witnesses were not necessary." It is shown that her sister,

Mrs. Von Wallbrunn, was in such need that it was not unlikely that the testatrix would want to help her by a new and larger bequest. In addition to these facts, the testatrix did indorse the paper: "this will was made at Nauheim, August 22, 1922. My last wishes." It is impossible to explain that indorsement fully on the information available; but it seems clear, at least, that if she bore in mind at all the condition in which she had left this paper, she could not have considered it executed. There is nothing to show that she knew anything of the mode of execution permitted under the laws of Germany. She had not been advised that the signature she intended to make was dispensed with under any laws. There is no suggestion that the rule derived from the old case of *Lemayne* v. *Stanley, supra,* and now cited in support of the paper as a will, was ever brought to her attention. The Wilson will, with which she was familiar, and the validity of which was explained to her, was signed at the end, as seems to be required under French law. And the fact remains that the testatrix did not prepare this paper for execution under any foreign laws, but under the laws of Maryland. And it is significant that she retained the completed will of 1913, the last of a series of five wills made by her prior to 1922.

We think it unnecessary to labor the point. This Court does not find sufficient ground for probate of this as a final, executed will, and for this reason also concludes that the order appealed from in the second appeal must be affirmed.

> *Order on the Petition of Natalie Jenness Elwyn reversed, with costs to the appellant; and order on the Petition of Caroline Von Wallbrunn affirmed, with costs to the appellee.*