CHARLES C. COOK *v.* MINNIE I. PEARCE ET AL.
[No. 5, January Term, 1931.]

*Decided February 19th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William M. Ballou,* with whom was *Henry D. Blair* on the brief, for the appellant.

*George Moore Brady,* with whom were *John Mays Little* and *Maloy, Brady & Yost,* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellant brings up for review a decree in equity compelling specific performance of a contract by him to purchase land of the appellees. And the questions argued are: Whether there was a written, signed agreement, memorandum or note as required by the Statute of Frauds (Stat. 29 Car. II, c. 3, sec. 4); whether a description given in a writing, of the land concerned, was sufficiently certain to permit enforcement; whether mistake of the purchaser should prevent enforcement; and whether the contract was made on Sunday and was because of that fact unenforceable.

The sellers owned six acres of land in Baltimore County, bounded on the northern side by a county road known as

the Stablersville Road, on the western side by land owned by a Samuel Green, on the southern side in part, at least, by a road known as the Graystone Road, and on the eastern side by land belonging to one Slade. Cook, intending to buy Green's property for a right of way through it, wanted to buy the adjoining Pearce property to add to the Green tract. He thought the Pearce property bordered on both roads along its full width. Before buying the Green property—and he never did succeed in buying it—he made his agreement with the Pearces, but spoke only of a purchase of their lot next to the Green property, said nothing to them of making his purchase contingent upon his obtaining the Green property, or of a purpose to take only an option on the Pearce tract. In his testimony he said he asked the Pearces merely to sell him that property adjoining the Green property. Cook paid Mrs. Pearce $5 to bind the bargain, and then wrote out and had the sellers sign a receipt or memorandum in these words:

"Saturday, Oct. 27, 1928.

"Received from Dr. Charles C. Cook the sum of five ($5.00) dollars to bind the bargain of a portion of land of 6 acres more or less for One thousand dollars cash and clear of all expenses situate between the Gray Stone Road & the Slattersville Road the part south of the Slattersville Road adjoining the property of Mr. Samuel Green.

"Subject to title Guarantee.

 "Minnie I. Pearce,
"R. No. Silas W. Pearce."

It is not disputed that there may be a signing of an instrument sufficient to meet the requirement of the Statute of Frauds when the name is written in the body of the paper and not at the end. *Tilghman v. Steuart,* 4 Har. & J. 156, 175; *Higdon v. Thomas,* 1 Har. & G. 139, 148; *Drury v. Young,* 58 Md. 546, 553, 42 Am. Rep. 343; *Ex parte Cardozo,* 135 Md. 407, 109 A. 93; *In re De Garmendia's Estate,* 146 Md. 47, 51, 125A. 897. But the appellant contends that an insertion of the name in the third person, as in this

instrument, merely in a recital that the person named is the purchaser of land and has received money paid, is not a signing, because signing means a marking with the name as a declaration that the instrument is accepted by the writer. And there are authorities in other jurisdictions which support that contention. *Browne, Statute of Frauds,* sec. 357. But in this state it has been rejected, and a different construction of the requirement has been settled upon. In *Higdon v. Thomas,* 1 H. & G. 139, Thomas, on purchasing land, wrote in his own hand a bond and a receipt for money to be signed on behalf of the vendor, and although his own name appeared merely in recitals that he was the purchaser and payor of the money, the papers were held to be signed by him as the statute required. And that decision was followed on similar facts in *Drury v. Young,* 58 Md. 546, 553. We see no justification for departing from it now, and accordingly hold the memorandum in the present case, too, to be sufficient to comply with the statute.

The evidence shows that the actual situation of the land conforms to the items of description given in the memorandum. There are about six acres in the tract; it is situated between the Stablersville and Graystone Roads, and adjoins the property of Mr. Samuel Green as specified. The parties agree that the "Slattersville" Road, as it is named in the writing, was intended to be the road properly called the Stablersville Road. No difficulty in identifying the tract is suggested, and none exists. Dr. Cook's supposition that it was bounded throughout its full width by the Graystone Road was not mentioned during the negotiations, and was not made part of the basis of agreement in any way. The appellees testified that the boundaries were pointed out to Dr. Cook as he viewed the land. Moreover, the preponderance of the evidence is to the effect that the tract does in fact border on the Graystone road as Dr. Cook supposed. No exact survey was produced at the trial; the witnesses testified from rough pencil sketches. It is impossible for the court to say, therefore, that the description given in the memorandum is uncertain, or that there was any mistake as to location which

might induce a court of equity to withhold enforcement. *Diffenderffer v. Knoche,* 118 Md. 189, 84 A. 416; *King v. Kaiser,* 126 Md. 213, 94 A. 780; *Samuel v. Cityco Realty Co.,* 141 Md. 27, 118 A. 124.

The appellant testified that it was his purpose only to secure an option, and that he meant to express a bargain for an option in the writing produced; and he argues that the memorandum either should not be construed to contain more than an option contract, or, if it must be so construed, should not be enforced because of his mistake in making it express more than he intended. In the light, especially, of the evidence of both parties that the negotiations and bargain were in terms of purchase and not of an option, this court concurs in construing the memorandum to refer to a purchase. The added stipulation, "Subject to title guarantee," seems to lend confirmation to this, as it would ordinarily indicate a contract of sale otherwise complete. And, as for a mistake, the court could not find that the appellant attempted to negotiate an option but used inapt words. The distinction between a purchase and an option to purchase was clear to him, and yet he asked only for a sale, agreed on a price, paid five dollars to bind the bargain, and drew up the memorandum or receipt which stipulated that the transaction was subject to title guaranty. If there was a mistake on his part, it must, we conclude, have been one of forgetting that he came to take only an option, or that his plans required only an option at that stage. And such a mistake, by a competent bargainer, is not one which would justify withholding a decree of specific performance. Lord Esher, in *Borrow v. Isaacs* (1891), 1 Q. B. 417, 420, said: "I should say that mere forgetfulness is not a mistake at all in ordinary language. I cannot find any decision in courts of equity which has ever stated that mere forgetfulness is mistake against which equity would relieve." And see *McLaughlin v. Leonhardt,* 113 Md. 261, 273, 77 A. 647; *Diffenderffer v. Knoche,* 118 Md. 189, 195, 84 A. 416; *Henneke v. Cooke,* 135 Md. 417, 420, 109 A. 113. Contracts entered into in plain fully understood words should be more secure than they would be if open to attack

on the ground of such oversight or lack of prudence as is relied upon here. We concur with the lower court that there was no sufficient defense on the ground of mistake.

Finally, is the contract, being executory, void and unenforceable because made on Sunday? *Rickards v. Rickards,* 98 Md. 136, 140, 56 A. 397. The record does not enable the court to find the fact to be that the contract was made on Sunday. The writing bears a date of a Saturday. There was no averment in answer that Saturday was not the actual day of contract, and the appellees appear to assume that it was. The only ground for a finding to the contrary must be in two statements in testimony by Dr. Cook. He said, first: "Well, I paid five dollars, as I consider it, as a receipt— option receipt to bind the bargain to me, and it was on Sunday and I brought no paper with me. * * * I expected to receive a receipt and Mrs. Pearce very kindly offered me blank paper." And later, when the court started a question, "This was signed on Sunday, did you say anything to them —" Dr. Cook interrupted to say, "Pardon me, I took it Saturday." There is in the record no other testimony on the exact day of the agreement, and these two references seem rather to show that Saturday was the day.

We find no error in the court's decree.

*Decree affirmed, with costs to the appellees.*