EDGAR L. KAUFMANN, ET AL. *v.* SYLVIA L.
ADALMAN, ET AL.
*et al*

[No. 154, October Term, 1945.]

*Decided June 14, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Lee I. Hecht* and *Isaac Hecht* for the appellants.

*John O. Herman* and *Edward L. Ward* for Pittsburgh Plate Glass Co. and Max Lazarus & Sons, respectively, with whom were *Rome & Hamberger* and *Jacob S. New* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

Edgar L. Kaufmann and David Kaufmann, Jr., are copartners, trading as David Kaufmann's Sons. They are engaged in the operation of a wholesale radio, hardware and appliance business. Sylvia L. Adalman, Esther L. Goldman and Eva L. Greenberg are copartners, trading as Max Lazarus & Sons. They own a large building located at Holliday and Bath Streets, Baltimore City. In October, 1945, Edgar L. Kaufmann opened negotiations, on behalf of his partnership, with Sylvia L. Adalman, representing her partnership concern, for the rental of a part of the floor space in the building referred to. Negotiations continued from time to time until the 23d day of November, 1945, when the attorneys for Max Lazarus & Sons notified David Kaufmann's Sons that they would not lease the property.

The two Kaufmanns, copartners, trading as David Kaufmann's Sons (appellants), then instituted, against the three partners trading as Max Lazarus & Sons (three of the appellees) and Pittsburgh Plate Glass Company (the other appellee), their bill of complaint in the Circuit Court of Baltimore City. A demurrer to the bill was filed by each of the appellees, which was sustained by the court, and the appellants, declining to amend their bill, the court below entered a decree finally dismissing the same. From that decree the case comes to this court on appeal.

The bill alleged that the Kaufmanns conferred with Sylvia L. Adalman, who represented Max Lazarus & Sons, discussed the terms and conditions of a lease, and on the 17th day of October, 1945, Max Lazarus & Sons advised that they would rent the portion of the property referred to, for a period of five years, at a rental of $12,000 per annum, starting on the 1st day of April, 1946. That on the 26th day of October, 1945, Sylvia L. Adalman, representing Max Lazarus & Sons, and their attorneys, Rome, Rome & Hamburger, met, at the office of that firm, Edgar L. Kaufmann, representing appellants, with their attorney, Isaac Hecht. At that time a definite and final lease was agreed upon and the attorneys of Max Lazarus & Sons were to prepare a lease. On the 9th day of November, 1945, the attorneys for Max Lazarus & Sons left with appellants a typewritten copy of the lease, the terms and conditions of which had been agreed upon, and which lease is exibited with the bill. That on the 15th day of November, 1945, the attorney for appellants conferred with an associate of the firm of attorneys representing Max Lazarus & Sons and discussed certain minor changes which were to be made in the lease so that the same would be in accordance with the agreement and understanding theretofore reached between the parties, and it was agreed by the attorneys for the respective parties that the changes were all in accordance with the agreement and understanding between the parties, and that the lease would be retyped and returned to appellants' attorney so that a meeting could be arranged for the execution of the lease. Thereafter, on the 23d day of November, 1945, appellants were advised that the lease would not be entered into, and thereafter they were told that an option to purchase the property had been entered into with the Pittsburgh Plate Glass Company. In Exhibit No. 1 it is provided that appellants were to have an option to purchase the entire premises if the landlord desired to sell the same. It is further set out in the bill that appellants, when they reached a definite agreement and understanding as

to the lease, ceased their activities in looking for other available space, and notified their real estate agent who was seeking such space that they were no longer in the market as renters, and verbally notified their present landlords that they would vacate the premises which they then occupied, on or before the first day of April, 1946. Appellants further assert in their bill that they are willing and able to carry out the terms and conditions of the agreement and understanding reached on October 26, 1945, between them and Max Lazarus & Sons. These are the material allegations of the bill.

They prayed: (a) That Max Lazarus & Sons be restrained from conveying, leasing or in any manner disposing of the property owned by them and located at the corner of Holliday and Bath Streets, in Baltimore City, pending the final disposition of this bill of complaint. (b) That Pittsburgh Plate Glass Company, a Pennsylvania corporation, be restrained from exercising any option or agreement which it has or might have with Sylvia L. Adalman, Esther L. Goldman and Eva L. Greenberg, copartners, trading as Max Lazarus & Sons, pending the final disposition of this bill of complaint. (c) That the final agreement and understanding reached by the parties on the 26th day of October, 1945, be specifically enforced, and that the copartners (naming them), trading as Max Lazarus & Sons, "be required to deliver to your Complainants executed lease containing the agreement and understanding of the parties, for execution by your Complainants." (d) That the copartners (naming them), trading as Max Lazarus & Sons, "be required to offer the premises located at Holliday and Bath Streets in the City of Baltimore, of which they are the owners, to your Complainants if they desire to sell the same, in accordance with the understanding and agreement reached on the 26th day of October, 1945." And (e) For other and further relief as their case may require.

The lease exhibited with the bill provides for a term of five years, with an option of renewal for an additional term of two years under the same terms and conditions

"herein contained, upon giving the Lessors 60 days notice prior to expiration of lease, in writing, of their intention to exercise said option." The lease is unsigned by both the lessors and the lessees. In this lease the names of the lessors and the lessees only appear in the caption and *testimonium* clause, and directly thereunder, in typewriting, appears: "Max Lazarus & Sons By" and three blank lines, and under each line appears: "One of the Partners," and "David Kaufmann's Sons By" and under each of two blank lines appears: "One of the Partners." It is contended by appellants: 1. That there was a written agreement. 2. The acts of the appellees were fraudulent. 3. There was such part performance as to make this agreement an exception to the Statute of Frauds. 4. That the agreement should be enforced so as to prevent the perpetration of a fraud.

The fourth section of the Statute of Frauds, among other things, provides: "No Action shall be brought * * * upon any Contract or Sale of Lands, Tenements, or Hereditaments, or any Interest in or concerning them; * * * unless the Agreement upon which such Action shall be brought, or some Memorandum or Note thereof shall be in Writing, and signed by the Party to be charged therewith, or some other Person thereunto by him lawfully authorized." 29 Car. 2, Cap. 3, section IV., Alexander's British Statutes (Coe's Edition), Vol. 2, p. 690.

Appellants quote 27 C. J. Sec. 314, page 265: "The memorandum must show the contract between the parties. It must show an existing and binding contract, a concluded agreement, a meeting of the minds of the parties, as distinguished from mere negotiations or an unaccepted offer. It must disclose that it is a memorandum of the particular contract sought to be enforced rather than of some other contract or promise." See, also, 37 C. J. S., Frauds, Statute of, Sec. 180.

But that section of *Corpus Juris* continues: "Where the writing establishes that there was in fact no contract, or where it evidences a contract different from that which

the parties entered into, it fails to comply with the statute."

It is perfectly apparent that a contract to lease, like the case at bar, should be evidenced by a writing signed by the parties to be charged, or some person lawfully authorized. To sustain their position that the lease exhibited with the bill is a signed instrument, they quote *Drury v. Young*, 58 Md. 546, 42 Am. Rep. 343. That case was an action at law for damage for breach of an alleged oral contract for the sale of goods. There was a note or memorandum made by an employee of the defendant on a piece of paper whereon the partnership name of the defendant appeared in print at the top. In that case the court said: "It is therefore a sufficient signing, if the name be in print, and in any part of the instrument, provided that the name is recognized and appropriated by the party to be his."

The court further said that if the memorandum referred to "was insufficient of itself" there was a letter addressed by defendants to plaintiff "which sufficiently refers in its terms to the former note or memorandum" and which "would certainly be sufficient when taken in connection with it, to take this case out of the Statute." In the Drury case the parties intended the memorandum to be a complete and final statement of their transaction and there appeared nothing further to be done to lend efficacy to the paper.

There is no doubt that the signature to a writing, required by the Statute of Frauds, may be at some other place than at the end of the writing. *Higdon et ux. v. Thomas*, 1 Har. & G. 139;; *Cook v. Pearce*, 160 Md. 434, 153 A. 661. But the question in each case is: Did one, by such signature, intend to authenticate the instrument and become bound by it? For cases where a signature manifested an intention to authenticate an instrument see: *Ex parte Cardozo*, 135 Md. 407, 109 A. 93, 94; In *re De Garmendia's Estate*, 146 Md. 47, 125 A. 897. These were will cases. One will was drawn in the handwriting of the testator and the other drawn in the handwriting

of the testatrix. Judge Adkins said in *Ex parte Cardozo, supra:* "Exactly the same language as to signing is used as appears in the Acts 1798, Ch. 101, and in the Statute of Frauds, 29 Car. II, Ch. 3, Sec. 5."

In *De Garmendia's Estate, supra,* 146 Md. at page 53, 125 A. at page 899, Chief Judge Bond said: "The will considered in *Ex parte Cardozo,* 135 Md. 407, 109 A. 93, it will be noted, was in the same form as that in *Lemayne v. Stanley,* and in both of them the testator apparently meant the will to be complete without signature at the end. Where this appearance of completeness is lacking, as Judge Adkins said in *Ex parte Cardozo,* the principle may not apply." These decisions establish the principle that a signature appearing at any place in an instrument will be regarded as a binding act of the party, if it appears from the instrument that the party signing such instrument intended to authenticate it as a contract binding upon him. But if the instrument appears to be incomplete the principle may not apply. Chief Judge Bond, in the case last referred to, said: "Any incompleteness in such a paper is naturally taken as an indication that the testator did not finally adopt the paper as his will."

In *Mesibov, Glinert & Levy v. Cohen Bros. Mfg. Co.,* 245 N. Y. 305, 157 N. E. 148, 150; an action was brought on an alleged contract for the sale of goods. The memorandum relied on to satisfy the Statute of Frauds was an acknowledgement on the defendants' printed order form. The name "Cohen Bros." appeared in the heading and body, in print. No other sinature appeared. The court was presented the question as to whether the printed name could constitute a signing. At the foot of the paper there was printed the word "accepted" and a blank line. Judge Cardozo said: "Thus, in *Hubert v. Treherne,* 3 Man. & G. 743, the names of the parties were written in the body of the document, but at the end were the words, 'as witness our hands,' without other authentication. 'These words evidently show that the names of the contracting parties were meant to be subscribed, and that it was not intended that the insertion of the

names in the body of the instrument should operate by way of signature.' * * * We may, indeed, infer from the delivery of the writing that the defendant intended to assume the obligation of a contract, whether the document was signed or unsigned. It might have intended as much if there had been no writing whatever. It may even have supposed that a writing was unnecessary. Something more must be found before the statutory requirements can be held to be obeyed. The defendant must have intended, not merely to contract, but to sign. We see no mark of such a purpose." See *Knox v. Allard*, 90 N. H. 157, 5 A. 2d 716; *Bunch v. Garner*, 208 Ala. 271, 94 So. 114; *Upton Mill & Elevator Co. v. Baldwin Flour Mills*, 147 Minn. 205, 179 N. W. 904; *Sutherland v. Munsey*, 119 Va. 791, 89 S. E. 882; *Richmond Standard Steel Spike & Iron Co. v. Chesterfield C. Co.*, 4 Cir., 160 F. 832.

It would seem to be manifest that neither the Kaufmanns nor Max Lazarus & Sons intended the lease, Exhibit 1, to be executed by either of them, because the names of the respective parties were typewritten in the *testimonium* clause of that instrument. That it was not thereby regarded as having been executed is conclusively shown by typewriting immediately following the *testimonium* clause: "Max Lazarus & Sons By" and immediately thereunder three blank lines, and beneath each line are the words "One of the Partners," and "David Kaufmann's Sons By" and two blank lines, immediately under each of which are the words "One of the Partners." All of the lease, Exhibit 1, is typewritten and in this respect it is unlike our will cases referred to, where the instruments were in script, and in those cases it was clear that the signature was intended to authenticate the instrument and that the same was a completed document. In the case at bar this lease is wholly typewritten, and no part of it is in script.

In the tenth paragraph of the bill of complaint it is alleged that the attorneys for the respective parties met on the 15th day of November, 1945, and discussed certain minor changes which were to be made in the

lease so that the same would be in accordance with the agreement and understanding reached by the parties on the 26th day of October, 1945. While the changes which were discussed at this meeting are said to be minor, there is no allegation in the bill as to what the changes were. These changes were agreed upon by the attorneys for the parties and it seems to be the contention of the appellants that the attorneys could enter into a contract to lease for and on account of their clients. An attorney has not that authority. *Brown v. Hogan,* 138 Md. 257, 113 A. 756. Even though these changes were minor in the view of the attorneys, it was for the parties themselves to determine whether they were minor or material. If the terms alleged to have been agreed upon by the parties, prior to this meeting of their attorneys, were changed in the typewritten lease, the parties had a right to either accept or reject the changes made by the attorneys. The terms of a proposed contract cannot be changed by the attorneys for the parties, to whom was left the drafting of the contract, and it will not do when changes are so made, to say that they were minor. Whatever these changes were should have been set out in the bill and it would then have been for the court to determine whether the changes were minor or material. This change between the terms agreed on and the terms contained in the typewritten lease amounted to a rejection of the prior terms and a proposal of the original terms and conditions with modifications.

There is no doubt that the lease of this property was to be evidenced by writing signed by the parties, for counsel for appellants stated, in argument, that Max Lazarus & Sons wanted every "i" dotted and every "t" crossed. This lease exhibited with the bill is not signed and it violates the Statute of Frauds. It, therefore, cannot be enforced. It is further an incomplete document, both as to terms and as to signatures of the parties. In a bill for specific performance to enforce a contract such as the one at bar, the fact that it appears on its face to be violative of the Statute of Frauds, renders it

vulnerable on demurrer. *Randal v. Howard,* 2 Black 585, 67 U. S. 585, 17 L. Ed. 269; *Miller's Equity Procedure,* par. 139, page 179.

It is contended that the acts of the appellees were fraudulent and that this unexecuted and incomplete lease should be enforced to prevent the perpetration of a fraud. We are of opinion that appelants were negotiating with Max Lazarus & Sons for a written lease of the property here concerned. We think the bill clearly shows this to be so. Neither party acquired any right against the other respecting the matter in hand during the negotiating, because it was their intention that no contract would result until the terms thereof were reduced to writing and signed by the parties. The appellants must have known this and if they assumed, under these circumstances, that negotiations amounted to a contract, when in point of fact and in law the negotiations did not amount to a contract, whatever they did, upon their mistaken assumption, and whatever loss resulted therefrom, cannot be attributable to Max Lazarus & Sons.

Appellants refer to such cases as *Read Drug & Chemical Co., of Baltimore City v. Nattans,* 129 Md. 67, 98 A. 158, 160, and *Equitable Gas Light Co. of Baltimore City v. Baltimore Coal-Tar & Mfg. Co.,* 63 Md. 285, to show that fraud was perpetrated upon them in this case. The facts in those cases are far different from the facts set up in the bill in this case. In the *Read Drug & Chemical Co.* case there was a taking of possession under the lease and the expenditure of $30,000 in repairs and improvements. These acts by the complaining party constituted "a full performance of the contract by the plaintiff under circumstances which would make it appear that a refusal to execute the lease involves the commission of fraud." The *Equitable Gas Light Co.* case involves a contract for the sale of coal tar from the gas company to the coal tar company. A contract was drawn up and signed by the coal tar company, sent to the gas company, who never signed it but retained it in their files. Coal tar was sold under the terms of the contract and thereafter the gas

company said there was no contract and refused to sell any more coal tar. There were peculiarities in this case too, for coal tar was difficult, if not impossible to obtain in Baltimore, and the plaintiffs had made contracts relying upon getting their supply of coal tar from the defendant. The facts of that case have no relation to the case at bar.

They also refer to *Soehnlein v. Pumphrey,* 183 Md. 334, 37 A. 2d 843, and *Boehm v. Boehm,* 182 Md. 254, 34 A. 2d 447. In the former case a purchaser of land under an oral agreement took possession thereof, painted the house, weather-stripped and screened the house, fenced the property, and planted shrubs and fruit trees. They also paid on account of the property $2017, less taxes and insurance. This case, too, is a different case from the one at bar. The Boehm case involved a parol sale of land. The purchasers were in possession. In that case the court refused specific performance but allowed compensation in lieu thereof. The facts of that case are entirely different from the facts set up in the bill now under attack in this case.

The appellants finally assert that even if the lease, Exhibit 1, is unenforceable, that the case should be sent back so that "it (the court) must and will, after such a hearing, award damages to the Appellant to compensate it for the wrongs which have been done to it." It will be observed that there are no allegations in the bill that appellants took possession of the property which they sought to lease from Max Lazarus & Sons, or that they ever paid any rent for the property to Max Lazarus & Sons, or have done anything whatsoever because this proposed lease was not consummated, execpt to say that "having definitely reached an agreement and understanding as to leasing a portion of the premises from   *   *   * Max Lazarus & Sons, ceased their activties in looking for other available space and had the real estate agent who was seeking such space for them to cease his activities, and so verbally notified their present landlord that they would vacate the premises which they now occupy on

or before the 1st day of April, 1946." There is no affirmative allegation in the bill that appellants had any right to remain in the premises they occupied in November, 1945, after the first day of April, 1946. If they had no such right and were required to vacate on that date, it would appear that the matters involved in this case would have nothing to do with the appellants' relations with their landlord. The vacation of the premises which they occupied would not be referable to any breach of contract here, but might be solely caused because their tenancy expired on the 1st day of April, 1946. In other words, appellants assert that giving notice to their landlord of an intention to quit, calling off their real estate agent, and ceasing to look for property that they might rent, constitutes a part performance of the contract, Exhibit 1, filed with the bill. With this we do not agree.

"The act relied on as part performance must, in itself furnish evidence of the identity of the contract; and it is not enough that it is evidence of some agreement, but it must relate to and be unequivocal evidence of the particular agreement charged in the bill." *Boehm v. Boehm, supra* [182 Md. 254, 34 A. 2d 452], quoting *Semmes v. Worthington,* 38 Md. 298.

The Boehm case further holds that "the payment by the purchaser to the vendor of a part, or even the whole, of the purchase money is not an act of part performance which will of itself take the parol contract out of the Statute." We do not think any transaction appellants had with their landlord or with their real estate agent furishes any "evidence of the identity" of the proposed contract, Exhibit 1. It may relate to some agreement, but it does not relate and it is not "unequivocal evidence of the particular agreement charged in the bill."

The appellants urge that we should send this case back, in the hope that Max Lazarus & Sons will admit in their testimony the existence of Exhibit 1 as a contract binding upon them and the appellants, and they cite *Sealock v. Hackley,* 186 Md. 49, 45 A. 2d 744, which referred to *Trossbach v. Trossbach,* 185 Md. 47, 42 A.

2d 905, which held that the admissions of a party in form of testimony constitute sufficient *memoranda* or writings under the Statute of Frauds, for recorded testimony is regarded as equivalent to signed depositions, and that admissions of a party in testifying, while evidence in form, are in essence not mere evidence, but make evidence against him unnecessary. As we have stated before, the non-compliance with the Statute of Frauds in a case like this is a ground for demurrer. Whatever the hopes of appellants might be, they cannot take away from Max Lazarus & Sons the right to interpose a demurrer to their bill, and we have said the demurrer thus interposed is good. For the reasons given, the decree of the chancellor below is affirmed, with costs to appellees.

*Decree affirmed, with costs to appellees.*